UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ALVIN SCOTT COREY, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Civil No. 05-22-B-W |
| | ) | Criminal No. 97-75-B-W |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

### RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Alvin Corey has filed a 28 U.S.C. § 2255 motion seeking relief from his 1998 federal conviction. For the reasons below I recommend that the Court **DENY** Corey collateral relief.

*Discussion*

Corey was convicted by a jury for being a felon in possession of a firearm and an armed career criminal in violation of section 922(g) of title 18 of the United States Code, which makes it unlawful to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g) (emphasis added). In a dissenting opinion on Corey's direct appeal, Chief Judge Torruella was troubled by the use of hearsay evidence by a government witness crucial to establishing that the firearm underlying Corey's conviction was transported in interstate commerce:

> To accommodate a minor inconvenience in the presentation of
> evidence by the government, the majority allows a major incursion into a

criminal defendant's Sixth Amendment right to confrontation. This unfortunate outcome is the result of allowing so-called "expert" testimony contrary to the requirements of Federal Rule of Evidence 702. The majority goes further astray by failing to call upon the government to make an adequate showing of reasonable reliance under Federal Rule of Evidence 703. This regrettable development is especially egregious where, as here, the "experts in the particular field" are federal law enforcement officers testifying regarding a self-serving subject matter. Finally, the majority simply fails to take into account the fact that the use of hearsay evidence in a criminal case must pass constitutional muster. The Supreme Court has held that hearsay evidence must possess "particularized guarantees of trustworthiness," Ohio v. Roberts, 448 U.S. 56, 66 (1980), such that "adversarial testing would be expected to add little, if anything, to [its] reliability," Lilly v. Virginia, 527 U.S. 116, [125] (1999). I fail to see how the hearsay evidence objected to in this appeal meets this high standard, particularly when we consider that this evidence was used to establish a jurisdictional fact absent which there is no triable federal crime.

United States v. Corey, 207 F.3d 84, 92 -93 (1st Cir. 2000) (Torruella, Chief J., dissenting).

Four years later a majority of the United States Supreme Court in Crawford v. Washington opined "that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53-54 (2004) "Where testimonial statements are at issue," the majority concluded "the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 69. In one of five grounds Corey now seeks to reap the benefit of Crawford in this, his first, 28 U.S.C. § 2255 motion.

This motion is not timely under 28 U.S.C. § 2255 ¶ 6(1), which sets a one-year limitation period for filing a § 2255 motion running from "the date on which the judgment of conviction becomes final." Corey's direct appeal was decided March 28,

2000, and Corey did not seek Supreme Court review.  Therefore, Corey's four non-Crawford grounds should be denied as untimely.[1]

With respect to his Crawford ground, however, subsection § 2255 ¶ 6(3) gives movants a year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255 ¶ 6(3).  The United States, citing footnote 12 of Sustache-Rivera v. United States, 221 F.3d 8 (1st Cir. 2000), argues that any post-conviction proceeding seeking retroactive application of a right initially recognized by the Supreme Court is premature until the United States Supreme Court determines the right should be given retroactive effect.  Sustache-Rivera was a case addressing a second or successive § 2255 motion and I have not interpreted it as having the reach apropos first-time motions that the United States does.  See, e.g., United States v. Ellis, Crim. No. 97-44-B-S, 2001 WL 1273738, 4 -5 (D. Me. Oct. 22, 2001) (Kravchuk, Magis. J.).

In Dodd v. United States, a decision that issued after the United States responded to Corey's § 2255 motion, the United States Supreme Court held that if it "decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from this Court's decision within which to file his § 2255 motion."  __ U.S. __, __,  125 S.Ct. 2478, 2482 (2005).  While Justice Stevens, who wrote the Dodd dissent, remains convinced that it is the Supreme Court that must make the ¶ 6(3) retroactivity decision,

---

[1]     Corey filed a motion to amend his 28 U.S.C. § 2255 motion and forwards legal arguments that he contends "relate back" to his initial pleading.  First, the points he raises in this pleading are not factual but have to do with the legal landscape and this is landscape that the Court would have to consider even without Corey's attempted amendments.  Second, there is no reason to do so because the underlying claims that Corey seeks to relate back to are blatantly untimely and it would do Corey no good for his amendment to relate back to out-of-time grounds.

3

id. at 2486 n.4 ("While my view that this Court must make the retroactivity determination informs my belief that Congress had a mistaken understanding of how ¶ 6(3) would operate in practice, I would conclude that the 1-year limitation period begins to run when both requirements of ¶ 6(3) are met regardless of which court makes the retroactivity decision."),[2] the three justices joining Stevens's dissent did not join him on this point.  So, with Dodd now decided, it is now clear that if asked to do so within a year of a newly recognized right by a first-time 28 U.S.C. § 2255 movant, this Court must make the

---

[2]     Justice Stevens reasoned:
     In reaching its result, the Court relies on an assumption made by both parties and not challenged in this Court: namely, that the decision to make a new rule retroactive for purposes of this section can be made by any lower court. While I recognize that every Circuit to have addressed the issue has made the same assumption, I am satisfied that the Government's initial interpretation of this provision is the correct one. See Brief for United States as *Amicus Curiae* in Tyler v. Cain, O.T.2000, No. 00-5961, p. 16, n. 7. Under that interpretation, the requirement that "the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" is met only if the *Supreme Court* has made the right retroactive.
          Courts that have reached the contrary conclusion have principally relied on the fact that 28 U.S.C. § 2244(b)(2)(A) contains an explicit requirement that a new rule be "made retroactive ⋯ by the Supreme Court." (Emphasis added.) See *Ashley v. United States,* 266 F.3d 671, 674 (C.A.7 2001). Thus, the argument goes, the absence of "by the Supreme Court" after "made retroactive" must have some meaning. However, in that clause there is only one verb that the prepositional phrase "by the Supreme Court" can modify, whereas in the relevant clause of § 2255, ¶ 6(3), there are two: newly recognized and made retroactive. The more natural reading of ¶ 6(3) is that the prepositional phrase "by the Supreme Court" modifies *both* verbs of the subordinate clause. This reading comports with Congress' general direction that this Court, and not the lower courts, should provide the final answer to questions of interpretation arising under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See, e.g., 28 U.S.C. § 2254(d)(1) (requiring that a state-court decision be contrary to "clearly established Federal law, as determined by the Supreme Court of the United States " (emphasis added)). Additionally, it avoids difficult questions of which court can make a retroactivity determination, sets a uniform date by which lower courts can make determinations as to whether a petition is timely, and means that only those cases made retroactive by this Court can form the basis for a petition that can gain the benefit of tolling under § 2255, ¶ 6(3). Finally, it is the only interpretation that gives full effect to § 2255, ¶ 8(2), which allows prisoners who have already completed one round of federal habeas review to seek additional relief on the basis of such a new rule.
Id.

¶ 6(3) retroactivity determination if it has not already been made by the First Circuit

Court of Appeals.[3]

In Horton v. Allen the First Circuit Court of Appeals wrote:

After this appeal was briefed, the Supreme Court decided Crawford v. Washington 541 U.S. 36 (2004), which changed the legal landscape for determining whether the admission of certain hearsay statements violates the accused's right to confront witnesses. In Crawford, the Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant. Id. at 1374. This holding abrogated, in part, the prior rule that the admission of hearsay did not violate the Confrontation Clause if the declarant was unavailable and the statement fell under a "firmly rooted hearsay exception" or otherwise bore particularized guarantees of trustworthiness. Ohio v. Roberts, 448 U.S. 56, 66 (1980).

At oral argument, the parties disagreed over Crawford's application to Horton's petition. The debate is important because "new rules of criminal procedure" do not apply in habeas proceedings unless they fall within either of two exceptions: (1) the rule places a class of private conduct beyond the power of the state to proscribe, or (2) the rule is a "watershed rule" of criminal procedure, implicating the fundamental fairness and accuracy of the proceeding. See Teague v. Lane, 489 U.S. 288, 310-11 (1989); Curtis v. Duval, 124 F.3d 1, 5 (1st Cir.1997). While the question of the retroactive effect of Crawford, if any, is an important one, we bypass the question here because, as explained below, Crawford does not apply to this case. See Campiti v. Matesanz, 333 F.3d 317, 321-22 (1st Cir.2003) (stating that court need not resolve a Teague issue that was susceptible of resolution on narrower or easier grounds).

370 F.3d 75, 83 (1st Cir. 2004).

One member of a Ninth Circuit panel has concluded that Crawford announced a

new rule of criminal procedure that is watershed within the meaning of Teague.

Bockting v. Bayer, 399 F.3d 1010, 1014 -21 (9th Cir. 2005) (McKeown, Cir. J.,);

amended 408 F.3d 1127 (9th Cir. 2005).  However, one of the three panel members

---

[3]        As discussed below, the Ninth Circuit has concluded that Crawford is retroactive to cases on collateral review and the First Circuit has recognized the question but left it unanswered.  Given that this Court would be bound by a First Circuit decision that was at odds with the Ninth Circuit's, I do not view the Ninth Circuit's decision as having made Crawford retroactive to Corey's motion.

concluded that Crawford was not a new rule within the meaning of Teague and therefore retroactivity was not an issue, see id. at 1022 -1024 (Noonan, Cir. J. concurring in result), and the third filed a concurrence and dissent, agreeing with Judge McKeown's conclusion that Crawford was a new rule of criminal procedure that must be analyzed under Teague but dissenting on the question of whether it met the Teague criteria for retroactive application.  Adding even more uncertainty to the sea worthiness of the Bockting 'holding,' on a motion for rehearing en banc nine members of the Ninth Circuit joined in a dissent from the denial of rehearing en banc, stating: "Because Bockting conflicts with the decision of every other circuit to have considered the retroactivity of Crawford; because it conflicts with our own decision in Hiracheta; and, most of all, because it was wrongly decided."  418 F.3d 1055, 1061 (9th Cir. 2005) (O'Scannlain, Cir. J., joined by Kozinski, Kleinfeld, Graber, Gould, Tallman, Bybee, Callahan, and Bea, Cir. Js.); see also id. 1056-61.

     With respect to the other Circuits, the Tenth, Brown v. Uphoff, 381 F.3d 1219, 1227 (10th Cir.2004), the Second, Mungo v. Duncan, 393 F.3d 327, 336 (2d Cir.2004), the Sixth, Dorchy v. Jones, 398 F.3d 783, 788 (6th Cir.2005), and the Seventh,  Murillo v. Frank, 402 F.3d 786, 789-91 (7th Cir.2005), Circuits have all conclude that Crawford is in fact a new rule of criminal procedure but that it does not meet the second prong of Teague exception to non-retroactivity.

      It seems to me that Judge Easterbrook's Murillo analysis of this question cannot be bettered in its efficient discernment of Crawford's place in view of key Teague precedents. Judge Easterbrook reasoned:

               Teague and its successors say that a new rule of constitutional law
          is retroactive on collateral attack only if it places certain conduct beyond

6

the reach of the criminal law (that is, establishes that the defendant's acts were not subject to punishment) or if it establishes one of the rare "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." O'Dell v. Netherland, 521 U.S. 151, 157 (1997).

.....

It is obvious to us-as it was to a prior panel, see Owens v. Frank, 394 F.3d 490, 501 n. 8 (7th Cir.2005)-that Crawford establishes a new rule. It discards the framework that Roberts had adopted. True enough, as Judge Noonan observed, Crawford did not say that it was overruling Roberts; it emphasized that the declarant in Roberts had been subject to cross-examination. But it assuredly (and explicitly) jettisoned the Roberts standard. 124 S.Ct. at 1373. All of the Supreme Court's decisions between Roberts and Crawford had applied that understanding, though some of the Justices had questioned whether it should be maintained. Lilly provides a good example. Seven Justices asked and answered the Roberts questions (disagreeing four to three about their resolution); two wrote separately to stake out a different position. A rule is "new" for retroactivity analysis unless it was dictated by earlier decisions. See Banks, 124 S.Ct. at 2511. Crawford was not "dictated" by Roberts or Lilly; it broke from them. That the break takes the form of a return to an older, less flexible but historically better grounded approach does not make it less a break. All constitutional decisions find their ultimate basis in texts adopted long ago-here in the Bill of Rights (1791) and their application to the states via the fourteenth amendment (1868). Judicial rhetoric routinely invokes older norms. This does not mean that there has been no "new rule" of constitutional criminal procedure since 1868.

Whether Crawford adopts a fundamental rule essential to a fair and accurate trial is a subject that we pretermitted in Owens. Like the second, sixth, and tenth circuits (and Judge Wallace in Bockting ), we think the answer a straightforward "no." The Supreme Court has not identified any decision, other than Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that would be so profound. It has repeatedly declined invitations to treat one or another decision as a "watershed rule," including both Banks and Summerlin last Term. Summerlin holds that Apprendi v. New Jersey, 530 U.S. 466 (2000), surely a more sweeping change than Crawford (and more important to defendants, too, because it entitles them to a jury decision, while Crawford affects only what evidence the jury hears), is not retroactive on collateral attack. See also McReynolds v. United States, 397 F.3d 479 (7th Cir.2005).

Indeed, it would be a close question whether Crawford helps or hinders accurate decisionmaking. Live testimony is preferable to affidavits and transcribed confessions, because cross-examination can probe its weaknesses, but recorded testimony may be better than silence, when death or incapacity or threats or loyalty to one's confederates keep witnesses off the stand. The point of Crawford is not that only live

testimony is reliable, but that the sixth amendment gives the accused a right to insist on live testimony, whether that demand promotes or frustrates accuracy. Like the self-incrimination clause and other provisions in the Bill of Rights, the confrontation clause can be invoked to prevent the conviction of persons who are guilty in fact. What <u>Crawford</u> holds is that defendants enjoy this right <u>even when the hearsay is trustworthy</u>. This is not an indispensable innocence-protecting decision that must be applied retroactively to criminal prosecutions that have already been finally resolved on direct review.

There is another way to see the point. Violation of a truly vital rule of criminal procedure, such as entitlement to counsel (the holding of <u>Gideon</u>) leads to reversal without inquiry into harmless error. <u>See</u> <u>United States v. Cronic</u>, 466 U.S. 648 (1984). Violations of other, less fundamental rules are subject to harmless-error analysis. The confrontation clause is in the latter category; courts regularly examine evidence admitted without cross-examination to determine whether the error was harmless. <u>See</u> <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 682 (1986). This shows, as the tenth circuit observed in <u>Brown</u>, that <u>Crawford</u> cannot have established the sort of indispensable doctrine that applies retroactively even to closed cases.

402 F.3d at 789-91.

Most recently, in <u>Lave v. Dretke</u> the Fifth Circuit has granted a Certificate of Appealability on the question of <u>Crawford</u>'s retroactivity. 416 F.3d 372, 378-79 (5th Cir. 2005). <u>Lave</u> observed the Second, Sixth, Seventh and Tenth conclusion that <u>Crawford</u> is a new, but not retroactive, rule, but pointed to the Ninth Circuit's decision in <u>Bockting</u>, and concluded that "reasonable jurists would debate whether <u>Crawford</u> applies retroactively to Lave's habeas petition." <u>Id.</u>

Admittedly the question of the retroactivity of <u>Crawford</u> is not so settled that I am confident that the First Circuit will ultimately answer the question identified in <u>Horton</u> along the lines of <u>Murillo</u>. Clearly Chief Judge Torruella was troubled by the confrontation clause issue in Corey's trial vis-à-vis a law enforcement agent's testimony concerning the interstate commerce aspect of the firearm offense. In a passage prescient of the <u>Crawford</u> majority's concerns, he wrote:

8

The failure of Agent Cooney's testimony to meet the requirements of Fed.R.Evid. 703 is sufficient for a finding of reversible error. However, my concern runs deeper than the improper adherence to the technical intricacies of the Federal Rules of Evidence. Specifically, this is a criminal case and the defendant enjoys the protection of the Sixth Amendment's Confrontation Clause.

Where an expert relies on non-hearsay evidence, such as markings on the weapon, the evidence need only comply with Rule 703. However, where, as here, the testimony offered by the prosecution purports to rely on hearsay, the evidence must comply both with Rule 703 and the Confrontation Clause. The Seventh Circuit explained:

> In criminal cases, a court's inquiry under Rule 703 must go beyond finding that hearsay relied on by an expert meets these standards. An expert's testimony that was based entirely on hearsay reports, while it might satisfy Rule 703, would nevertheless violate a defendant's constitutional right to confront adverse witnesses.

United States v. Lawson, 653 F.2d 299, 302 (7th Cir.1981).

The Confrontation Clause gives a criminal defendant the right "to be confronted with the witnesses against him."  U.S. Cont. art. VI. The central concern of the Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990). Accordingly, pursuant to the Confrontation Clause, a defendant is "guarantee[d] an opportunity for effective cross-examination." Delaware v. Van Arsdall, 475 U.S. 673, 678-679 (1986).

The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process. Cross-examination is the principle means by which the believability of a witness and the truth of his testimony are tested. Kentucky v. Stincer, 482 U.S. 730, 736 (1987) (quoting Davis v. Alaska, 415 U.S. 308, 316 (1974)). In light of a defendant's right to cross-examination, out-of-court statements are admissible in a criminal trial only under limited circumstances.

Specifically, the Supreme Court has held that the Confrontation Clause is violated where an out-of-court statement of a witness does not bear adequate "indicia of reliability." Ohio v. Roberts, 448 U.S. 56, 66 (1980). The Supreme Court has stated that "indicia of reliability" can be demonstrated in two ways. Where the evidence falls within "a firmly rooted hearsay exception," reliability can be inferred. Id. All other cases require "a showing of particularized guarantees of trustworthiness," id., such that "adversarial testing would be expected to add little, if anything, to their reliability," Lilly v. Virginia, 527 U.S. 116, [125](1999). Further, the "particularized guarantees of trustworthiness" must be "drawn from the totality of circumstances that surround the making of the statement and

that render the declarant particularly worthy of belief." Idaho v. Wright, 497 U.S. 805, 820(1990).

....

Here, even a cursory examination of the record shows that there are no "indicia of reliability" sufficient to uphold the admission of Agent Cooney's testimony regarding the interstate nexus prong of § 922(g)(1). See Roberts, 448 U.S. at 66. First, Agent Cooney offered the out-of-court statements of Smith & Wesson historian Roy Jinks as substantive evidence against the defendant. These statements were made in a telephonic interview that was conducted by the government without procedural safeguards after criminal proceedings had begun. Given the "totality of the circumstances," there is no reason to believe that these out-of-court statements offered by the prosecution to prove interstate nexus are "particularly worthy of belief." Wright, 497 U.S. at 820, 827. Second, Agent Cooney relied on in-house ATF files. As I already indicated, there is little difference, from a hearsay standpoint, between the ATF's internal reference materials, which are compiled by ATF agents interviewing firearm manufacturers in the field, and a telephone call to the manufacturer. These records have not been subjected to public scrutiny, and they are not likely to be available pursuant to the Freedom of Information Act. See 5 U.S.C. § 552(c)(7). Given the presumption of inadmissibility accorded accusatory hearsay statements not admitted pursuant to a firmly rooted hearsay exception, see id. (citing Lee v. Illinois, 476 U.S. 530, 543(1986)), the government's evidence of interstate nexus does not possess "particularized guarantees of trustworthiness" sufficient to uphold appellant's conviction.

The Smith & Wesson employees, in being saved an appearance before the jury, were rendered immune from cross-examination. The prosecution was thereby allowed to establish a jurisdictional fact by simply producing a witness who did nothing but summarize out-of-court statements made by others. Consequently, the defendant had no way to test the veracity of the evidence offered against him. This use of hearsay evidence, in addition to failing the requirements of Fed.R.Evid. 703, denied appellant his constitutional right to confront adverse witnesses. See Lawson, 653 F.2d at 302.

In a criminal case a court's inquiry under Rule 703 must go beyond a finding that the hearsay relied on by an expert meets the standards of the Federal Rules of Evidence. If this Court is willing to allow a government agency to rely on its own internal manuals and post-indictment telephone calls to establish a basic element of a crime, simply by clothing the testifying agent with the unwarranted aura of "expert," then, in my opinion, the plain language of the Confrontation Clause has been emasculated beyond recognition. Requiring the government to produce non-hearsay evidence on the jurisdictional requirement of § 922(g)(1) is hardly a major burden on the prosecution. Particularly where, as here, the weapon in question is stamped with a serial number, it is a minor

> bureaucratic inconvenience to establish where the weapon was manufactured, by requiring the subpoenaing of records from the manufacturer. The resources of the government can hardly be strained by requiring such direct proof of interstate nexus.

Corey, 207 F.3d at 103 -05.

It is understandable that Corey would think that the indirect vindication of this dissent in Crawford would entitle him to another bite at the apple and so has brought this 28 U.S.C. § 2255 motion.  However, the § 2255 ¶ 6(3) retroactivity determination is not based on the particular contours of a movant's claim.  Once it is determined that a defendant's motion raises a viable claim under the new rule relied upon, the retroactivity determination is one that is made without reference to how compelling a claim is.  This court is constrained by the limitations put on collateral relief by the Teague doctrine and the § 2255 ¶ 6 statute of limitation which are functions of where Corey is in the post-conviction review pipeline and not of how compelling his claim is.

### Conclusion

Because Crawford is not retroactive to cases on collateral review and because Corey's other claims are clearly time barred, I recommend that the Court **DENY** Corey 28 U.S.C. § 2255 relief.

<u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

September 12, 2005.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge